**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH D. UNDERWOOD, on behalf of himself and others similarly situated, | ) ) ) | Civil Action No.: |
| Plaintiff, | ) ) | CLASS ACTION COMPLAINT |
| vs. | ) ) ) | JURY TRIAL DEMAND |
| EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and EQUIFAX INFORMATION SERVICES, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**Nature of Action**

1.      This is an action for damages brought by Joseph D. Underwood ("Plaintiff"), on behalf of himself and others similarly situated, under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants").

2.      Plaintiff, like many other consumers, satisfies his annual child support obligations by way of automatic withdrawals from his salary.

3.      Those withdrawals coincide with the issuance of bi-weekly paychecks by Plaintiff's employer.

4.      Thus, Plaintiff satisfies his annual obligation by way of 26 equal, bi-weekly payments.

5.      Following months of accurate reporting on Plaintiff's credit reports, and without explanation, in or around September 2015, Defendants began reporting errant delinquencies for Plaintiff's child support account with the Texas Attorney General's Office ("OAG").

6.      Plaintiff immediately confirmed with OAG that his account was—and still remains—current, and he thereafter lodged complaints with each of the Defendants, as well as OAG, for the erroneous "late" designations on his credit reports.

7.      Though no answers or explanations have been provided to date, OAG has indicated to Plaintiff that the nature of his bi-weekly child support payments—the result of his employer's bi-weekly payroll cycle—may have caused, and may continue to cause, inaccurate discrepancies on his credit files.

8.      This is because Plaintiff's monthly obligation may not always match perfectly with his monthly contributions as a result of his 26 bi-weekly paychecks, depending on whether that particular month included two paychecks or three. However, such a bi-weekly payment method is expressly allowed to make timely child support payments.

9.      Plaintiff's disputes to Defendants remain unresolved, and despite having fully satisfied all child support obligations to date, his credit standing has been negatively affected by Defendants' numerous incorrect "late" designations on Plaintiff's OAG account, resulting in difficult financial choices for his family.

10.     Upon information and good faith belief, the same is true for many other consumers who similarly satisfy their Texas child support obligations through automatic bi-weekly payments as a result of their employers' chosen bi-weekly payroll cycle.

11.     Defendants—having received complaints from Plaintiff and likely many other class members—have thus been derelict in their duties under the FCRA to ensure the accuracy of Plaintiff's and the class's credit reports, and to adequately reinvestigate disputed delinquencies.

### Jurisdiction and Venue

12.     This Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

13.     Venue is proper before this Court under 28 U.S.C. § 1391(b), as Defendants transact business in this district and maintain corporate offices in this district. Defendants Experian and Trans Union are headquartered in this district.

### Parties

14.     Plaintiff is a natural person who at all times resided in Fort Worth, Texas.

15.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

16.     Experian is a for-profit corporation, with headquarters in Schaumburg, Illinois, engaged in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of reporting or furnishing consumer reports to third parties.

17.     Experian uses the means and facilities of interstate commerce for the purpose of preparing or furnishing consumer reports.

18.     Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

19.     Trans Union is a for-profit limited liability company, with corporate headquarters in Chicago, Illinois, engaged in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of reporting or furnishing consumer reports to third parties.

20.     Trans Union uses the means and facilities of interstate commerce for the purpose of preparing or furnishing consumer reports.

21.     Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

22.     Equifax is a for-profit limited liability company that maintains offices in Lombard, Illinois and is engaged in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of reporting or furnishing consumer reports to third parties.

23.     Equifax uses the means and facilities of interstate commerce for the purpose of preparing or furnishing consumer reports.

24.     Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

<strong>Factual Allegations</strong>

**A. Background**

25.     Plaintiff is responsible for child support obligations and satisfies such obligations by way of automatic payments through OAG.

26.     That is, OAG deducts a specified amount from Plaintiff's wages during each of his 26 pay periods per year so that Plaintiff's annual child support obligations are satisfied in full.

27.     Since Plaintiff is paid by his employer on a bi-weekly basis, he earns a total of 26 paychecks each calendar year.

28.     Thus, Plaintiff receives at least two paychecks per month and, in certain months, three, depending on the timing of the close of each pay period.

29.     However, because Plaintiff's annual child support obligations are divided equally among his 26 pay periods, the amount of child support collected by OAG may vary from month

to month depending on whether that particular month allowed for two or three paychecks—and hence, two or three pro-rata child support payments.

30.     As a result, and upon information and belief, in certain months where Plaintiff receives only two paychecks, his child support payments are reported as "late" because the money that OAG is allocating as owed by Plaintiff on a per-month basis is not satisfied in those months, even though Plaintiff's obligations are satisfied in full as set forth in his payment plan.

31.     OAG initiated credit reporting for Plaintiff in or around November 2013, and as of December 2014, Plaintiff's OAG account showed as current with all three major credit bureaus— Experian, Trans Union, and Equifax.

32.     But on or about September 20, 2015, Plaintiff received an alert from a third-party credit monitoring service that Experian was now reporting a new "30-days late" entry, for September 2015, for Plaintiff's OAG account.

33.     Then, on or about September 23, 2015, Plaintiff received a similar notification indicating a September 2015 "late" designation for the OAG account on his Equifax credit file.

34.     Finally, on or about September 29, 2015, Plaintiff received a similar notification concerning the OAG account on his Trans Union credit file.

35.     Upon the first alert from the credit monitoring service—specific to Plaintiff's Experian credit file—he immediately contacted OAG by filing a complaint through OAG's online portal to challenge the unfounded "late" designation for September 2015.

36.     Plaintiff indicated in his complaint to OAG that there had been no disruptions in his automatic child support payments through his bi-weekly pay, and thus no basis for the negative "late" designation on his credit file.

37. On or about September 20, 2015, Plaintiff received a telephone call from an OAG representative confirming that his OAG account was, indeed, current.

38. The representative further instructed Plaintiff to file a complaint with the credit bureau(s) to have the discrepancy resolved.

39. Accordingly, on or about October 16, 2015, Plaintiff filed disputes with all three Defendants using their respective online portals to challenge the inaccurate OAG "late" designations on his credit file, as confirmed by OAG directly.

**B. Experian Dispute**

40. On or about November 4, 2015, Experian completed its review of Plaintiff's credit file and thereby removed the erroneous "30-days late" designation for September 2015 for Plaintiff's OAG account.

41. However, as a result of its review, Experian also added six additional delinquencies to Plaintiff's OAG account.

42. Thus, as of November 4, 2015, Experian showed six erroneous delinquencies for Plaintiff's OAG account: November 2014 (30-days late); December 2014 (60-days late); January 2015 (90-days late); February 2015 (120-days late); July 2015 (30-days late); and August 2015 (60-days late).

43. Plaintiff filed another dispute with Experian on or about January 13, 2016.

44. Plaintiff included with his dispute: (1) a copy of the court-issued amended Income Withholding For Support notice, dated April 20, 2015, showing Plaintiff's child support obligations payable by bi-weekly support payments of $196.15; and (2) a copy of his payments record with OAG confirming his account as current.

45. Experian initially responded on or about January 18, 2016 to state that the documentation provided by Plaintiff could not be used as requested to make changes or deletions to Plaintiff's credit file, and that Experian was contacting the furnisher of the information (*i.e.*, OAG).

46. On or about February 4, 2016, Experian then notified Plaintiff of the results of his dispute: no changes had been made to Plaintiff's credit file with respect to the OAG account.

47. Nevertheless, Experian has since removed the six delinquencies that were in dispute as of January 2016.

48. However, on March 20, 2016, Plaintiff received another credit alert that Experian had now added a "30-days late" delinquency for March 2016 for Plaintiff's OAG account.

49. Plaintiff immediately phoned OAG to dispute this latest delinquency, and also followed up via email.

50. On or about March 31, 2016, OAG responded to Plaintiff that it was reporting his account correctly to the credit bureaus, and that no changes need be made by OAG. Under Plaintiff's protest, OAG closed his complaint.

51. As of today, Experian still shows one delinquency for Plaintiff's OAG account:

| March 2016 | 30-days late |
|---|---|

## C. Equifax Dispute

52. On or about November 7, 2015, Equifax completed its own review of Plaintiff's credit file and thereby deleted the challenged "late" designation associated with Plaintiff's OAG account.

53.     However, subsequent to this deletion, Equifax began reporting the same six erroneous "late" designations on Plaintiff's OAG account as Experian had reported in November 2015.

54.     Equifax also later added another "30-days late" entry to Plaintiff's OAG account for January 2016.

55.     So, as of today, Equifax still wrongfully includes seven errant OAG delinquencies on Plaintiff's credit report:

| November 2014 | 30-days late |
|---|---|
| December 2014 | 60-days late |
| January 2015 | 90-days late |
| February 2015 | 120-days late |
| July 2015 | 30-days late |
| August 2015 | 60-days late |
| January 2016 | 30-days late |

### D.  Trans Union Dispute

56.     At the conclusion of Trans Union's investigation following Plaintiff's online dispute, it, too, removed the September 2015 "late" designation but added six new erroneous "late" designations for Plaintiff's OAG account—the same six designations that Experian and Equifax had also added.

57.     Moreover, like Equifax, Trans Union also later added to Plaintiff's OAG account another "late" designation for January 2016.

58.     Trans Union then added another "late" designation for February 2016.

59.     Thus, as of today, Plaintiff's Trans Union credit file shows the following eight errant OAG delinquencies in total:

| November 2014 | 30-days late |
|---|---|
| December 2014 | 60-days late |
| January 2015 | 90-days late |
| February 2015 | 120-days late |
| July 2015 | 30-days late |
| August 2015 | 60-days late |
| January 2016 | 30-days late |
| February 2016 | 30-days late |

**E.  Inaccurate Reporting for Bi-weekly Payments**

60.     In or around February 2016, having made little-to-no progress in his direct dealings with Defendants, Plaintiff filed an additional complaint with OAG using OAG's online portal.

61.     In response to this complaint, OAG representative Connie Lauer placed a telephone call to Plaintiff on or about February 29, 2016.

62.     During that call, Ms. Lauer asked Plaintiff to provide her with copies of his credit reports showing the "late" designations, and indicated that she would investigate his concerns internally.

63.     Plaintiff provided a copy of his credit reports to Ms. Lauer via email.

64.     Thereafter, Ms. Lauer telephoned Plaintiff again following her internal review.

65.     After consultation with OAG's credit reporting division located in Austin, Texas, Ms. Lauer had reached certain conclusions.

66.     First, Ms. Lauer noted that by virtue of Plaintiff's bi-weekly pay schedule, his child support obligations were not being met in certain months (when he received only two paychecks) despite the fact that by the end of the year, it was a "wash" since his annual obligation would be met.

67.     In other words, when Plaintiff receives only two paychecks in a given month, he has paid only 2/26 of his annual obligation—or approximately 7.69%.

68.     But to keep pace with his annual obligation on a monthly basis, Plaintiff would actually have to pay one-twelfth of that obligation, or approximately 8.33%.

69.     Thus, for any month in which Plaintiff receives only two paychecks, there is a shortfall of approximately 0.64% of his annual obligation. Conversely, for months where Plaintiff receives three paychecks, he overpays his monthly obligation. Regardless, the terms of Plaintiff's obligation expressly allow him to make payments deducted from his bi-weekly paycheck.

70.     For example, Ms. Lauer explained that Plaintiff's February 2016 child support payments were short by $52.77 due to the number of pay periods that month.

71.     She indicated this could be a reason for the "late" designations on Plaintiff's credit files.

72.     To alleviate this concern, on or about February 29, 2016, Plaintiff manually paid an additional $52.77 for February 2016 using OAG's online portal.

73.     This payment was in addition to Plaintiff's regular, bi-weekly child support withdrawals that are automatically processed through his employer's payroll.

74.     For fear of similar discrepancies, Plaintiff also made additional manual payments for March 2016, April 2016, and May 2016, separate and apart from his automatic withdrawals through his employer during those months.

75.     Significantly, by making these additional payments above and beyond his automatic bi-weekly withdrawals, at the end of the year, Plaintiff will have contributed *more* in child support in 2016 than he is legally required to do.

76.     However, none of those additional monies will be returned to Plaintiff at the end of the year.

77.     Further, despite posting additional payments to his account, manually, through OAG's online portal, because of OAG's delay in actually processing those payments, certain Defendants are still reporting delinquencies for certain of those months, as notated above.

78.     Also noteworthy, none of OAG's documentation addresses this predicament—that obligors like Plaintiff with bi-weekly pay schedules and concurrent automatic withdrawals might experience negative credit reporting for supposed "late" payments when a given month includes only two pay periods instead of three.

79.     Despite following up with Ms. Lauer on numerous occasions—and sending more copies of his credit reports still showing "late" designations for his OAG account—neither Ms. Lauer nor anyone else at OAG could definitively explain the errant discrepancies on Plaintiff's credit reports.

80.     In fact, as noted above, during this time period, Experian began reporting yet another "30-days late" delinquency for Plaintiff's OAG account, this time for March 2016.

81.     On or about March 31, 2016, Ms. Lauer spoke with Plaintiff by telephone and indicated that OAG's credit reporting division had confirmed to her that OAG was reporting Plaintiff's account correctly, and that OAG was therefore closing out Plaintiff's complaint despite the fact that his improper "late" designations still had not been resolved.

82.     With no place else to turn, Plaintiff files the instant action on behalf of himself and all others facing the same or similar predicament.

## Class Action Allegations

83.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed classes:

> **Inaccuracy Class**: All persons for whom (a) in the one year preceding the date of this complaint, (b) Experian Information Solutions, Inc. and/or Trans Union, LLC and/or Equifax Information Services, LLC reported one or more delinquencies related to a Texas Attorney General's Office account for child support obligations, (c) in connection with an account where the person had bi-weekly automatic withdrawals from his or his salary or bank account for the child support obligations, and (d) where the child support obligations were current at the time of the reporting.

> **Reinvestigation Class**: All persons who (a) submitted a dispute to Experian Information Solutions, Inc. and/or Trans Union, LLC and/or Equifax Information Services, LLC, (b) concerning one or more delinquencies listed on his or her credit report(s) related to a Texas Attorney General's Office account for child support obligations, (c) but whose Texas Attorney General's Office account was current at the time of the reporting, (d) and for whom the recipient of the dispute(s) failed to correct the inaccurate delinquency(ies), (e) in the one year preceding the date of this complaint.

Excluded from the classes are Defendants, their officers and directors, members of those officers' immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had controlling interests.

84.     The proposed classes satisfy Rule 23(a)(1) because, upon information and belief, they are so numerous that joinder of all members is impracticable.

85.     The exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.

86.     The proposed classes are ascertainable in that, upon information and belief, the names and addresses of all members can be identified in business records maintained by Defendants and OAG.

87.     The proposed classes satisfy Rule 23(a)(2) and (3) because Plaintiff's claim is typical of the claims of the members of the classes.

88.     To be sure, the claims of Plaintiff and all of the members of the classes originate from the same conduct, practice, and procedure on the part of Defendants, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed classes.

89.     Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the classes and has retained counsel experienced and competent in class action litigation.

90.     Plaintiff has no interests that are contrary to or in conflict with the members of the classes that he seeks to represent.

91.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

92.     Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the proposed classes to individually redress the wrongs done to them.

93.     There will be no difficulty in the management of this action as a class action.

94.     Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the proposed classes.

95.     Among the issues of law and fact common to the classes:

a. Defendants' violations of the FCRA as alleged herein;

b. Defendants' failure to ensure the accuracy of class members' credit reports, as required by 15 U.S.C. § 1681e(b);

c. Defendants' failure to adequately reinvestigate class members' disputes and maintain reasonable procedures to prevent the reappearance of deleted information, as required by 15 U.S.C. § 1681i;

d. the existence of Defendants' identical conduct particular to the matters at issue;

e. the availability of statutory penalties; and

f. the availability of attorneys' fees and costs.

**Count I: Violation of 15 U.S.C. § 1681e(b)**

96.     Plaintiff repeats and re-alleges the factual allegations contained in paragraphs 1 through 95 above.

97.     The FCRA at 15 U.S.C. § 1681e(b) provides:

> (b) *Accuracy of report.* Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

98.     Here, Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow such reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.

99.     Specifically, Defendants failed to establish or to follow reasonable procedures to avoid the inaccuracies regarding allegedly delinquent child support payments included in Defendants' credit files for Plaintiff, particularly after Plaintiff disputed such inaccuracies to Defendants.

14

100.    As a result of Defendants' conduct as described herein, Plaintiff has suffered damages including, but not limited to, overpayment of child support obligations, loss of creditworthiness and the ability to purchase and benefit from credit, time and expense disputing the incorrect reporting, and the mental and emotional pain and anguish and humiliation and embarrassment from the foregoing.

101.    For example, just prior to the OAG delinquencies appearing, Plaintiff and his family intended to purchase a new home. However, after consulting a mortgage broker, Plaintiff was advised that his credit score as a result of the (erroneous) OAG delinquencies—and corresponding dispute process—would have a significant negative impact on his ability to obtain financing for such a purchase.

102.    For this reason, Plaintiff and his family ultimately chose not to proceed with their property search until the errant OAG delinquencies are resolved.

103.    Moreover, as a result of the same concerns, Plaintiff could not participate in his family's recent refinancing of their recreational vehicle, nor in his wife's purchase of a new automobile.

104.    Thus, the bulk of the installment debt on these vehicles is now in Plaintiff's wife's name alone, accordingly affecting Plaintiff's wife's credit file and credit score.

105.    Defendants' conduct, action(s), and/or inaction was willful, rendering them liable to Plaintiff for damages pursuant to 15 U.S.C. § 1681n.

106.    In the alternative, Defendants' conduct, action(s), and/or inaction was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

## Count II: Violation of 15 U.S.C. § 1681i

107.    Plaintiff repeats and re-alleges the factual allegations contained in paragraphs 1 through 95 above.

108.    The FCRA at 15 U.S.C. § 1681i provides, in pertinent part:

(a) Reinvestigations of Disputed Information

(1) Reinvestigation Required

(A) *In general*. Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

* * *

(5) Treatment of Inaccurate or Unverifiable Information

(A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall–

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

(B) Requirements Relating to Reinsertion of Previously Deleted Material

(i) *Certification of accuracy of information.* If any information is deleted from a consumer's file pursuant to subparagraph (A),

16

the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate.

(ii) *Notice to consumer.* If any information that has been deleted from a consumer's file pursuant to subparagraph (A) is reinserted in the file, the consumer reporting agency shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion or, if authorized by the consumer for that purpose, by any other means available to the agency.

(iii) *Additional information.* As part of, or in addition to, the notice under clause (ii), a consumer reporting agency shall provide to a consumer in writing not later than 5 business days after the date of the reinsertion

(I) a statement that the disputed information has been reinserted;

(II) the business name and address of any furnisher of information contacted and the telephone number of such furnisher, if reasonably available, or of any furnisher of information that contacted the consumer reporting agency, in connection with the reinsertion of such information; and

(III) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information.

(C) *Procedures to prevent reappearance.* A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i)).

109. Defendants violated 15 U.S.C. § 1681i by (1) failing to correct inaccurate information in Plaintiff's credit files after receiving actual notice of such inaccuracies—namely, the allegedly late child support payments that Plaintiff disputed—(2) failing to conduct a lawful

reinvestigation, and (3) otherwise failing to comply with the procedures outlined in section 1681i for the reinvestigation and subsequent treatment of disputed inaccurate information.

110.    As a result of Defendants' conduct as described herein, Plaintiff has suffered damages including, but not limited to, overpayment of child support obligations, loss of creditworthiness and the ability to purchase and benefit from credit, time and expense disputing the incorrect reporting, and the mental and emotional pain and anguish and the humiliation and embarrassment from the foregoing.

111.    As indicated above, the errant OAG delinquencies have negatively affected Plaintiff's credit file and accordingly curtailed his family's ability to proceed with the purchase of a new home, as well as his family's purchase and refinancing of vehicles.

112.    Defendants' conduct, action(s), and/or inaction was willful, rendering them liable to Plaintiff for damages pursuant to 15 U.S.C. § 1681n.

113.    In the alternative, Defendants' conduct, action(s), and/or inaction was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

**Trial by Jury**

114.    Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a)  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b)  Adjudging that Defendants violated 15 U.S.C. §§ 1681e(b) and 1681i;

c)  Awarding Plaintiff and members of the classes statutory and/or actual damages, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

18

d) Awarding Plaintiff and members of the classes punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2);

e) Awarding Plaintiff and members of the classes reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a) and Rule 23 of the Federal Rules of Civil Procedure; and

f) Awarding other and further relief as this Court may deem just and proper.


Date: August 3, 2016                      Respectfully Submitted,

                                          */s/ Aaron D. Radbil*
                                          Aaron D. Radbil
                                          Greenwald Davidson Radbil PLLC
                                          106 E. Sixth Street, Suite 913
                                          Austin, Texas 78701
                                          Phone: (512) 322-3912
                                          Fax: (561) 961-5684
                                          aradbil@gdrlawfirm.com

                                          Jesse S. Johnson*
                                          Greenwald Davidson Radbil PLLC
                                          5550 Glades Road, Suite 500
                                          Boca Raton, Florida 33431
                                          Phone: (561) 826-5477
                                          Fax: (561) 961-5684
                                          jjohnson@gdrlawfirm.com

                                          * to seek admission *pro hac vice*